OPINION
{¶ 1} This appeal arises from an entry of summary judgment in a shareholder dispute. The disputing parties, all shareholders of a close corporation identified as Village Plaza Sparkle, Inc. ("the company"), have two different versions regarding the sale of stock by a departing shareholder in 1985. The version of appellees, who are the legal representative of John Vitullo, deceased, and Vincent J. Furrie, Sr., is that John Vitullo and Vincent J. Furrie, Sr. secured a bank loan from Dollar Bank in 1985 in the amount of $500,000 for the purpose of buying out the shares of the company then owned by Wilson D. Patton. The version of the appellant, Minnie Schiavone, is that, of the total purchase price for Patton's shares, $100,000 of it came from corporate funds belonging to the company. Schiavone's various claims for relief seek to remedy what she perceives to be an illegal payment of corporate funds to benefit two other shareholders, Vitullo and Furrie. The trial court entered summary judgment in favor of appellees, finding that Schiavone did not adduce sufficient evidence to counter appellees' motion for summary judgment. We find that the evidence adduced by Schiavone was sufficient to overcome the motion for summary judgment and, for that reason, reverse the trial court's judgment.
 {¶ 2} An agreement respecting the sale of the Patton stock to Vitullo and Furrie was reduced to writing in two stock purchase agreements, each dated September 5, 1985. By the terms of each agreement, Vitullo and Furrie undertook to purchase five shares of stock from Wilson D. Patton and to pay Patton $250,000 each for their respective shares. At the time of the agreement, Patton's shares represented one-third of the issued and outstanding shares of the company. Except for the identity of the parties, the agreements were identical in all respects, and each contained the following provision respecting payment:
 {¶ 3} "[Patton] hereby sells to [Vitullo and Furrie] and [Vitullo and Furrie] hereby [purchase] from [Patton] five (5) shares of stock which [Patton] owns in corporation for the sum of Two Hundred Fifty Thousand Dollars ($250,000) and other good and valuable consideration, receipt of which is hereby acknowledged by [Patton]."
 {¶ 4} At the time of the agreement, there were two other shareholders: Schiavone and Loretta Zinni, each of whom owned five shares of the company. After the agreements were consummated, Vitullo and Furrie each owned a total of ten shares of the company.
 {¶ 5} The stock purchase agreements were executed by Patton, as seller, by Vitullo and Furrie, in their individual capacities, and also by Furrie, as president of the company.
 {¶ 6} Besides the two stock purchase agreements dated September 5, 1985, the record contains a cognovit promissory note dated September 9, 1985, wherein an entity identified as "Furrie and Vitullo" promised to pay The Dollar Savings and Trust Company the sum of $500,000 in installment payments commencing December 9, 1985, and ending on September 9, 1995. This instrument was executed on the face of the note by Vincent J. Furrie, as "president," and by John C. Vitullo, as "secretary treasurer"; and on the reverse side by Vitullo and Furrie, in their individual capacities.
 {¶ 7} The record does not contain the actual payment, or a copy thereof, for Patton's shares, but Furrie's deposition testimony is to the effect that Dollar Bank sent a check for $500,000 directly to Patton on September 17, 1985.
 {¶ 8} Contra to the documentary evidence adduced by Vitullo and Furrie, there is deposition testimony of Wilson D. Patton taken in 1999. In that deposition, Patton recalled that he received two payments for his shares in 1985, one payment in the amount of $400,000, and the other payment sometime later for $100,000. The latter payment, he recalls, came in the form of a company check, and not from Dollar Bank. In addition, the record contains a copy of the company's balance sheet dated January 4, 1987, which contains the following line entry under liabilities: "Notes payable W. Patton: $100,000." This balance sheet was prepared by the company's accountant at the time.
 {¶ 9} Schiavone's initial complaint, filed March 19, 1999, contained five claims for relief, the first three of which were resolved by summary judgment. The fourth claim alleged a shareholder derivative claim on behalf of herself and other shareholders similarly situated, to the effect that Vitullo and Furrie had converted funds of the company to their own use when they effected the purchase of Patton's shares. The fifth claim sought the imposition of a constructive trust so that the company could take possession of the shares purchased from Patton with company funds.
 {¶ 10} After the first three claims were resolved by summary judgment, Schiavone amended her complaint to add a sixth claim, alleging fraud and deceit by Vitullo and Furrie in representing that the entire purchase price of $500,000 came from their personal funds.
 {¶ 11} Vitullo and Furrie again filed a motion for summary judgment with respect to Schiavone's fourth, fifth, and sixth claims for relief. The court granted the motion for summary judgment, finding that "[a]ll the facts" demonstrate "that a loan for the full purchase price was made by Defendants and paid to Patton within days of the bank making the money available," and that "no fact is presented by Plaintiff to rebutt [sic] the facts presented by the Defendants." In its order, the court referenced only the fourth claim for relief, the shareholder derivative claim. The order also contains the language, "[t]here is no just cause for delay in appeal of this matter."
 {¶ 12} Schiavone has presented a single assignment of error on appeal:
 {¶ 13} "The trial court erred in entering summary judgment in Defendant-Appellees' favor on the Amended Complaint's Fourth Claim."
 {¶ 14} Summary judgment is proper where (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.[1] The court shall consider "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any."[2] Further, the party seeking summary judgment must point specifically to some evidence which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims.[3] In response, the nonmoving party must set forth specific facts that demonstrate there is a genuine issue of material fact to be tried. The nonmoving party may not rest upon bare allegations or conclusory statements in his complaint.[4]
 {¶ 15} An additional consideration regarding summary judgment is that in considering whether or not to grant a motion for summary judgment, the trial court may not weigh the evidence and thereby enter summary judgment to the party with the stronger case: "such weighing of evidence is inappropriate in the summary judgment arena."[5]
 {¶ 16} A review of the record reflects that appellees have a greater quantity of evidence in support of their motion for summary judgment than Schiavone. There is the deposition testimony of Furrie and his affidavit to the effect that he entered into a stock purchase agreement with Patton, that he secured a bank loan from Dollar Bank in order to pay for the stock, that the bank sent the money directly to Patton, and that no corporate funds were used for the purchase of Patton's stock. There is also the affidavit of Furrie's wife, who was acting as office manager of the business in 1985, to the effect that her husband obtained the funds for the stock purchase from Dollar Bank and that no corporate funds were used for the purchase. There are also documents, to wit, the stock purchase agreements and the cognovit promissory note to Dollar Bank evidencing an obligation for $500,000 by Vitullo and Furrie.
 {¶ 17} The evidence on Schiavone's side, which is the side of the nonmoving party, consists of deposition testimony from Wilson D. Patton, whose recollection is that the corporation sent him a check in 1985 for $100,000, representing the balance of the purchase price for his shares. There is a balance sheet entry prepared by the company's accountant and dated January 4, 1987, to the effect that a note payable for $100,000, payable to Wilson D. Patton, existed as of that date. Finally, there is the deposition testimony of Schiavone, who was asked whether the balance sheet entry was related to the purchase of Patton's shares, "[s]o, it's your contention that the hundred thousand — you believe that the hundred thousand dollar note in Exhibit C [balance sheet] may have something to do with the [stock purchase] transaction?" Her answer was equivocal, "[u]nless there's another explanation." Equivocal or not, however, her answer could be construed as an affirmation that indeed the balance sheet entry for the $100,000 note to Patton was related to the stock purchase transaction.
 {¶ 18} Schiavone's deposition was taken in 2001, and we recognize that in the intervening sixteen years the recollections of people who were present during the events that transpired in 1985 will have eroded. This was also true in Furrie's deposition, also taken in 2001. In his deposition, he tried to explain away the $100,000 balance sheet entry ("note payable to Patton"), but wound up offering different theories based on different obligations as to why it appeared as it did, and in the end confused the whole issue. Thus, the evidence adduced both pro and contra the motion for summary judgment may not be as fresh and precise as the litigants would like it to be, which makes the job of the trial court that much more difficult in trying to analyze a transaction that happened nineteen years prior. Nevertheless, for purposes of determining whether summary judgment is appropriate, the trial court must accept the evidence in the record, such as it is, and apply the rules pertaining to summary judgment enunciated above, in spite of the passage of time and the fading memories of the people involved. In this connection, if the trial court is going to truly refrain from weighing the evidence, then it must come to the conclusion in this case that there is at least some evidence adduced by the nonmoving party to counter the motion for summary judgment before it. Ultimately, the evidence adduced by Schiavone may not be sufficient to overcome the evidence adduced by Vitullo and Furrie, but that kind of weighing of the evidence is premature in advance of a hearing on the merits. Because we find that Schiavone adduced some evidence sufficient to withstand the motion for summary judgment, we reverse the judgment of the trial court and remand this matter for further proceedings consistent with this opinion. Schiavone's fifth and sixth claims for relief, having to do with the creation of a constructive trust and fraudulent misrepresentations, respectively, were not disposed of by the trial court. Our review of this matter likewise makes no disposition with respect to those claims. These latter two claims are left for further adjudication by the trial court consistent with this opinion.
Ford, P.J., Colleen Mary O'Toole, J., concur.
[1] Civ. R. 56(C).
[2] Id.
[3] Dresher v. Burt (1996), 75 Ohio St.3d 280, 292.
[4] Smith v. L.J. Lewis Ents., Inc., d.b.a. Action Emergency Ambulance
(Sept. 28, 2001), 11th Dist. No. 2000-T-0052, 2001 Ohio App. LEXIS 4413, at *13, quoting Civ. R. 56(E).
[5] State v. 1805 Wertz Avenue, S.W. Canton, Ohio and $445.00 in U.S.Currency (June 2, 1997), 5th Dist. No. 1996CA00288, 1997 Ohio App. LEXIS 3272, at *7.